**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian L. Bentley, et al., | No. CV17-00966-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Mesa, et al., | |
| Defendants. | |

Plaintiffs Janna and Brian Bentley and their seven minor children bring this action under 42 U.S.C. § 1983, alleging violations of the Fourth and Fourteenth Amendments against the City of Mesa, the Director of the Department of Child Safety ("DCS"), Gregory McKay, DCS employees Cristina Baggen and Gina Cordova, and City of Mesa Police Officers Darrel Palmer, Edward Clifford, Laurie Kessler, Domenick Kaufman, Lauren Glazer, Molly Corfits, and Rob Russo. Doc. 59. Defendants McKay, Baggen, and Cordova move to dismiss Plaintiffs' malicious prosecution and wrongful institution of civil proceedings claim (Count 9) under Rule 12(b)(6). Doc. 64. For the following reasons, the Court grant the motion.[1]

**I.  Background.**

The Court takes the factual allegations of Plaintiffs' amended complaint (Doc. 59) as true for purposes of the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1] Plaintiffs' second amended complaint appears to label two claims as Count 9. *See* Doc. 59 at 32-33. Defendants' motion refers to the latter. Doc. 64.

(2009). On March 31, 2016, at about 8:00 p.m., Janna Bentley told her seven-year-old son, T.A., to do his chores, but T.A. refused. Doc. 59 at 5. At about 10:15 p.m., Janna went to T.A.'s bedroom to check on him, but two of T.A.'s siblings reported that he had left. *Id.* at 5. Janna searched for T.A. for an hour in the house and outdoors. *Id.* at 6. His behavior was not uncommon – on other occasions, T.A. had hidden from his parents or snuck off to a neighbor's home. Janna called Brian, who was working late, around 11:30 p.m. to discuss a plan for finding T.A., and they remained in contact while Janna and two Bentley children searched the property and neighborhood. *Id.*

Brian arrived home at 1:30 a.m. on April 1 and began searching for T.A. Janna fell asleep at 2:30 a.m. Brian knew that T.A. was not wearing shoes and had not left with his bicycle. The neighborhood was safe, and families were familiar with each other's children. *Id.* With that in mind, Brian turned on the home's exterior flood lights and unlocked the doors, and at 3:30 a.m. he laid down by the front door to wait for T.A.

The search continued at 6:30 a.m., soon involving more than a dozen family members and neighbors. *Id.* at 7. After Janna called 911 for help at 8:00 a.m., Mesa Police Department ("MPD") officers began searching the neighborhood and a helicopter surveilled. Just over two hours later, T.A. was spotted hiding in a bush in the front yard of the Bentley's next-door neighbor. He was nervous and upset, but not crying or physically harmed. *Id.* at 7-8.

Brian carried T.A. into the home, and several officers and DCS workers followed. *Id.* at 8-9. Although paramedics confirmed that T.A. was fine and needed no emergency medical attention, several officers and DCS workers insisted that T.A. needed immediate evaluation at the hospital and Brian and Janna eventually agreed to go. *Id.* at 9-10. T.A. was later discharged from the hospital, and he and Janna were taken into custody and transported to an MPD substation, where T.A. was interviewed without Janna. *Id.* at 12-13, 16.

Meanwhile, around 10:15 a.m., MPD officers had arrived at Great Hearts Academy where two Bentley children, B.J. and M.J., attended school. *Id.* at 13. The officers

fabricated a reason to take custody of the children and ordered the school's administration not to notify their parents. *Id.* at 13-14. The officers removed the children and transported them to the substation to be interviewed by DCS. *Id.* at 13-16. Janna, T.A., B.J., and M.J. were released later that afternoon, and a DCS report found no concerns about the Bentleys' ability to care for and protect their children. *Id.* at 15-16.

On April 21, 2016, DCS's investigation into the Bentley family was dismissed, concluding that no safety threats or risks warranted further DCS intervention. *Id.* at 17. On May 19, Janna and Brian made a public records request to MPD, seeking all records related to the events of April 1, specifically those related to B.J. and M.J.'s removal from school. On August 9, 2016, the State of Arizona charged Brian and Janna with two misdemeanors: one count of child neglect and one count of contributing to the delinquency of a minor. *Id.* A jury found them not guilty on all counts on August 9, 2017. *Id.* at 18.

In June 2017, DCS had begun another investigation into whether to place Janna and Brian on the DCS Central Registry, and soon instituted a civil action against them. *Id.* at 33-34. DCS concluded its investigation in November with a decision to enter Janna and Brian in the registry, finding that they neglected T.A. and failed to provide supervision while searching for him. *Id.* at 34-35. The Bentleys requested a hearing before an administrative law judge who ruled in their favor. DCS adopted the ALJ's opinion and did not add the Bentleys to the registry. *Id.* at 35-36.[2]

## II. Rule 12(b)(6) Standard.

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A successful motion to dismiss under Rule 12(b)(6) must show either that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Balistreri*

---

[2] The Central Registry is a confidential list of parents found to be neglectful and abusive. *See Walton v. Arizona*, No. CV-16-03597-PHX-DJH, 2017 WL 5997441, at *2 (D. Ariz. June 27, 2017); *Jennifer G. V. Ariz. Dep't. of Child Safety*, No. 1 CA-CV 13-0720, 2014 WL 6790750, at *1 (Ariz. Ct. App. Dec. 2, 2014).

*v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss as long as it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

### III. Discussion.

The Ninth Circuit has recognized a § 1983 claim for "malicious prosecution with the intent to deprive a person of equal protection of the law or otherwise to subject a person to a denial of constitutional rights[.]" *Poppell v. City of San Diego*, 149 F.3d 951, 961 (9th Cir. 1998) (citing *Usher v. City of L.A.*, 828 F.2d 556, 562 (9th Cir. 1987)). In order to prevail on such a claim, "a plaintiff 'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'" *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)). Malicious prosecution claims may be brought not only against prosecutors, but also against others who have wrongfully caused the prosecution. *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011).

#### A. Personal Participation.

Plaintiffs allege that, in violation of the Fourth and Fourteenth Amendments, DCS "caused a prosecution to be instituted and continued against the Bentley's to be entered onto the DCS Central Registry for over 705 days." Doc. 59 at 33-36. Defendants argue that Plaintiffs have failed to allege specific conduct by each Defendant, and that the claim improperly alleges only wrongful conduct by DCS as an entity. Doc. 64 at 4.

"Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "[P]ersonal participation is not the only predicate for section 1983 liability. Anyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable." *Id.* This causal connection can occur "by setting in motion a series of acts by others which the actor knows or reasonably should know would cause" the constitutional injury. *Id.*; *see also Sanders v. City & Cty. Of San Francisco*, 226 Fed. App'x 687, 591 (9th Cir. 2007) (citing *Johnson* for same proposition); *Daniels v. Maricopa Cty. Special Health Care Dist.*, No. CV-07-1080-PHX-SRB, 2008 WL 11449087, at *5 (D. Ariz. Mar. 31, 2008) (same).

Plaintiffs contend that they need not show at this stage that each Defendant's actions constitutes a constitutional violation. Doc. 71 at 3. While the Court takes as true the well-pled allegations of Plaintiffs' complaint for a motion to dismiss, Plaintiffs have not alleged any conduct by the three State Defendants that caused Plaintiffs' injury or relates to their malicious prosecution claim. The allegations pertaining to that claim do not mention McKay, Cordova, or Baggen, and Plaintiffs' general allegations mention no conduct by McKay. *See* Doc. 59 at 5-18, 33-36. Plaintiffs allege only that Cordova was present and interacted with them at their home on the day T.A. was found, and that Baggen was present and interacted with them at their home and the MPD substation. *Id.* at 10, 12, 14. Plaintiffs also allege that Baggen authored the Assessment of Impending Danger report which found no concerns about the Bentley's ability to care for their children. *Id.* at 16-17.

Plaintiffs assert that the participation of the State Defendants is self-evident. Doc. 71 at 3-4. They state that Baggen and Cordova investigated the incident, authored a report, and submitted it to their supervisor, and that, as the head of DCS, McKay is aware

of and advances the internal procedures of the organization and its employees. *Id.* at 4. As already noted, however, the complaint lacks these assertions. Plaintiffs' complaint does not allege that Baggen and Cordova created the reports that were the basis of DCS's decision to proceed with the registry prosecution – only that Baggen created the initial report finding no concerns about the Bentleys, and did so long before DCS later began civil proceedings. Nor does the complaint assert that McKay was aware of the civil proceedings or directed them. Plaintiffs' malicious prosecution claim refers only to DCS's actions, not those of McKay, Cordova, or Baggen, and none of the allegations connect Defendants to the civil proceedings DCS instituted against the Bentleys. *See* Doc. 59 at 33-36; *see also Jones v. Williams*, 297 F.3d 930, 934-35 (9th Cir. 2002) (a plaintiff cannot "hold an officer liable because of his membership in a group without a showing of individual participation in the unlawful conduct").

Citing *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009), Plaintiffs assert that, at a minimum, the complaint pleads sufficiently that McKay, Cordova, and Baggen were integral participants to the alleged constitutional violations. Doc. 71 at 3-4. As the Ninth Circuit explained in *Hopkins*, the "integral participant" rule "extends liability to those actors who were integral participants in the constitutional violation, even if they did not directly engage in the unconstitutional conduct themselves." 573 F.3d at 770. But a plaintiff still must demonstrate a defendant's "fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (citing *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004)).

The Ninth Circuit had held that an armed officer who stood at the door of an apartment while other officers conducted an unlawful search inside could be a "full, active participant in the search" and was therefore subject to § 1983 liability. *Hopkins*, 573 F.3d at 770 (discussing *Boyd*). At the same time, the court held that an officer who waited in the front yard interviewing a witness, but did not participate in the unconstitutional search of the home, was not a participant. *Id.* This distinction show that facts matter. The integral participant rule explains a theory for imposing § 1983 liability – it does not lower Plaintiffs'

burden of pleading facts that state a viable claim. Plaintiffs have pled no facts showing that McKay, Cordova, and Baggen were active or integral participants in the conduct constituting Plaintiffs' constitutional injury.

Plaintiffs cite the allegation in their complaint referring to the ALJ's opinion which ruled in their favor as "sufficient to demonstrate the personal participation of the State Defendants in the DCS Central Registry Prosecution." Doc. 71 at 4. But the allegation does not refer to McKay, Cordova, or Baggen by name, nor does the language quoted from the ALJ opinion in Plaintiffs' brief. *See* Doc. 59 at 36.[3] Plaintiffs also assert that in his supervisory role at DCS, McKay "may have created an environment" that contributed to the Bentley's prosecution with his implementation of policies and procedures related to the Central Registry prosecution. Doc. 71 at 4. There is no respondeat superior liability under § 1983. *See Taylor*, 880 F.2d at 1043. While a supervisor may be liable for constitutional violations committed by his subordinates, Plaintiffs must allege that McKay "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *See id.* These allegations appear nowhere in the complaint, and Plaintiffs "cannot amend [their] complaint merely by discussing unpled claims in a response to a motion to dismiss." *Piper v. Gooding & Co. Inc.*, No. CV-18-00244-PHX-DLR, 2018 WL 924947, at *4 (D. Ariz. Feb. 15, 2018).

**B. Immunity.**

"[Q]ualified immunity is the norm for government officials, and [] absolute immunity exists only in 'exceptional situations' where it is 'essential for the conduct of the public business.'" *Stapley v. Pestalozzi*, 733 F.3d 804, 810-11 (9th Cir. 2013) (quoting *Butz v. Economou*, 438 U.S. 478, 507 (1978)). To determine whether absolute immunity applies, courts are to evaluate "the functional nature of the activities being performed, not the status of the person performing them." *Stapley*, 733 F.3d at 809 (citing *Forrester v. White*, 484 U.S. 219, 229 (1988)). Under this functional approach test, "prosecutors have

---

[3] Plaintiffs cite Exhibit A of their complaint for language from the ALJ's opinion, but no exhibit is attached to their second amended complaint. Doc. 59.

absolutely immunity under § 1983 for a decision to initiate a criminal prosecution," *id.* (citing *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)), as do "agency officials performing certain functions analogous to those of a prosecutor . . . with respect to such acts," *id.* at 810 (quoting *Butz*, 438 U.S. at 511-14). This is because, like prosecutors, the "'discretion which executive officials exercise with respect to the initiation of administrative proceedings might be distorted' in the absence of absolute immunity." *Torres v. Goddard*, 793 F.3d 1046, 1052 (9th Cir. 2015) (quoting *Butz*, 438 U.S. at 515).

The Supreme Court has found that absolute immunity applies to prosecutors' actions and decisions in preparation for trial, federal ALJs and agency hearing officers performing adjudicative functions, agency attorneys arranging the presentation of evidence in an administrative adjudication, and individuals acting within the scope of their duties in a judicial process, including advocates and witnesses. *In re Castillo*, 297 F.3d 940, 948 (9th Cir. 2002) (collecting cases). The Ninth Circuit has also applied absolute immunity to social workers "for the discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents." *Miller v. Gammie*, 335 F.3d 889, 898 (9th Cir. 2003) (discussing and affirming *Meyers v. Contra Costa Cty. Dep't. of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987)).

Defendants argue that even if Plaintiffs had sufficiently alleged the personal involvement of McKay, Cordova, and Baggen, they are entitled to absolute immunity because the alleged conduct constitutes official functions by State advocates. Doc. 64 at 6. Plaintiffs respond that Defendants' cited authority pertains only to prosecutors and agency attorneys and is inapplicable because they have not sued the State Attorney general or his deputies. Doc. 71 at 5.

Plaintiffs' arguments are not responsive to the Supreme Court's absolute immunity test, which focuses not on the defendant's status but on the nature of the activities performed and whether they are sufficiently judicial or prosecutorial. *See Stapley*, 733 F.3d at 810; *see also Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 924 (9th Cir. 2004); *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 434-36 (1993). Indeed, the

Supreme Court has held that "officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision." *Butz*, 438 U.S. at 516; *see also Fry v. Melaragno*, 939 F.2d 832, 836-37 (9th Cir. 1991).

While Plaintiffs' brief seems to assert that McKay, Cordova, and Baggen are "officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication," *see Butz*, 438 U.S. at 516, their complaint fails to identify Defendants' conduct that caused the alleged constitutional harm. As a result, the Court cannot evaluate the functions involved in that conduct to determine whether absolute immunity applies.

### C. Violation of Constitutional Rights.

"In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'" *Awabdy*, 368 F.3d at 1066 (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)).

Defendants argue that Plaintiffs failed to allege that the civil proceedings instituted against them were for the purpose of denying a specific constitutional right under the Fourth or Fourteenth Amendments. Doc. 64 at 8. Plaintiffs respond that the proceedings were based on Defendants' disapproval of their faith and parenting style, and that the prosecution interfered with their rights to freedom of religion and familial association, and their right to be free from malicious prosecution. Doc. 71 at 7. Plaintiffs also assert that placement on the Central Registry would have impaired their rights to obtain employment with the government, schools, or in positions that provide direct services to children and vulnerable adults. *Id.* But Plaintiffs cite no page of their complaint where these allegations of specific violations appear. They allege only that Defendants' conduct was "shocking to the conscience and deliberately indifferent to the constitutional rights of the Plaintiffs." Doc. 59 at 36. Only the heading of Plaintiffs' malicious prosecution claim mentions the

Fourth and Fourteenth Amendments, with no other allegations that Defendants prosecuted Plaintiffs for the purpose of denying them equal protection or other specific rights under the Fourth and Fourteenth Amendments. *See id.* at 33-36.

To the extent Plaintiffs seek to advance a substantive due process right "to be free from criminal prosecution except upon probable cause," such a right does not exist. *Mohaherin v. Pinal County*, No. CV-07-1746-PHX-DGC, 2007 WL 4358254, at *5 (D. Ariz. Dec. 7, 2007) (quoting *Albright v. Oliver*, 510 U.S. 266, 268 (1994) (plurality)); *see also Awabdy*, 368 F.3d at 1069. And Plaintiffs have failed to otherwise allege factual allegations making plausible that "the purpose of the allegedly malicious prosecution was to deny 'equal protection or another specific constitutional right.'" *Pike v. Arizona*, No. CV-18-01515-PHX-BSB, 2018 WL 3862039, at *3 (D. Ariz. Aug. 14, 2018) (quoting *Awabdy*, 368 F.3d at 1066); *see also Iqbal*, 556 U.S. at 678.

### D. Malice.

Defendants assert that Plaintiffs allege only a general legal assertion and fail to plead any factual allegations regarding the element of malice. Doc. 64 at 9. Malice is present where the defendant "initiate[d] or procure[d] the proceedings . . . primarily for a purpose other than that of bringing an offender to justice[.]" *West v. City of Mesa*, 128 F. Supp. 3d 1233, 1246 (D. Ariz. 2015) (quoting *Donahoe v. Arpaio*, 986 F. Supp. 2d 1091, 1107 (D. Ariz. 2013) (internal quotations omitted)).

Plaintiffs allege that "DCS's continued investigation was motivated by malice and resulted in the harassment of the Bentleys." Doc. 59 at 33. This conclusory recital of the malice element is insufficient to state a claim that is plausible on its face. Plaintiffs seem to argue that the allegation that DCS initiated the proceedings after Plaintiffs were acquitted pleads sufficiently the element of malice as to Defendants McKay, Cordova, and Baggen. Doc. 71 at 6. Plaintiffs also confuse and collapse pleading malice and pleading that Defendants acted for the purpose of depriving them of constitutional rights. *Id.* But Plaintiffs allege that DCS told them that an acquittal would not resolve the civil proceedings. *See* Doc. 59 at 35. And Plaintiffs cite no allegations in their complaint

showing that McKay, Cordova, and Baggen initiated the proceeding against them, nor that it was for a purpose other than "bringing [them] to justice" and determining whether to enter their names on the registry. *See West*, 128 F. Supp. 3d at 1246. They make only insufficient and general statements, unsupported by factual assertions, against DCS.

### E. Conclusion.

For the reasons stated above, Plaintiffs have failed to state a claim for malicious prosecution and initiation of civil proceedings against Defendants Gregory McKay, Cristina Baggen, and Gina Cordova. Plaintiffs did not request leave to amend. The Court will dismiss Count 9.

**IT IS ORDERED:** that Defendants' motion for partial dismissal (Doc. 64) is **granted**. Plaintiffs' claim for malicious prosecution and wrongful institution of civil proceedings in Count 9 of their second amended complaint (Doc. 59) is dismissed.

Dated this 16th day of July, 2019.

*David G. Campbell*
David G. Campbell
Senior United States District Judge